UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LATANYA BRANDON,

                       Plaintiff,

         -against-                         10 Civ. 5174 (RJH)

LORI O'MARA and RIVERDALE       **MEMORANDUM OPINION**
KINGSBRIDGE ACADEMY,                 **AND ORDER**

                       Defendants.

---

Richard J. Holwell, District Judge:

       Defendant Lori O'Mara moves to dismiss *pro se* plaintiff Latanya Brandon's claim of discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), the New York State Human Rights Law ("SHRL"), and New York City Human Rights Law ("CHRL"). For the reasons that follow, O'Mara's motion is GRANTED.

## BACKGROUND

       The following facts are taken from a letter to the EEOC annexed to Brandon's form complaint and from Brandon's opposition to the motion to dismiss.

       Brandon began working as a teacher at Riverdale Kingsbridge Academy ("the Academy") in September 2001. (Pl.'s Opp'n at 3.) In November 2007, Brandon requested a leave of absence to undergo treatment for cancer. (*Id.*) She began the leave of absence in January 2008. (Dec. of A. Mason, Jan. 27, 2011 Ex. B, Subsection 3.)[1]

---

[1] Defendants have divided Brandon's letter to the EEOC into subsections for ease of reference. The Court uses those subsections for the same reason.

Brandon returned to work sometime in the first half of 2008.  In medical forms submitted to the Department of Education, Brandon indicated that, following her treatment, she would experience fatigue and would be unable to lift heavy objects.  (*Id.*)  Brandon also indicated that her "workload was overwhelming in addition to [her] treatments and requested assistance throughout the school year."  (*Id.*)

Rather than accommodate Brandon's requests, the Academy assigned her to teach classes for the 2008-2009 school year that were incidental to her normal class schedule in areas beyond the scope of her training and certification.  (*Id.*)  The "Academy would not consider any alternatives to this incidental teaching assignment . . . . despite the fact that other science teachers were willing to switch classes" with her.  (*Id.*)  Brandon further alleges that she requested "supplies, deadline extension/time management assistance, and a program alteration to something [she was] more qualified to teach."  (*Id.*)  "All of [these] requests made during the first semester" of the 2008-2009 school year— "September 2008-Janaury 2009"—"went unanswered or [were] denied."  (*Id.*)

According to Brandon, she "was then penalized for requesting assistance by being given an unsatisfactory annual rating" in evaluations that appear to have been made by O'Mara and someone identified as Academy Vice Principal Mohan whose first name is not specified.  (*Id.* Subsection 4.)  Brandon alleges that the Academy rated her unsatisfactory because she "failed to maintain a wholesome classroom atmosphere, to control a class, and to use effectively appropriate methods and techniques."  (*Id.*)  Brandon avers that the Academy had no basis to rate her unsatisfactory for these reasons because (1) she passed a state Assessment of Teaching Skills evaluation based on a video of her classroom teaching and (2) she did in fact participate with other teachers in an

2

"intervisitation" program that was not meant to be evaluative. (*Id.*) Brandon also alleges that other staff members who did not complete the intervisitation program did not receive unsatisfactory ratings. (*Id.*) Brandon claims that receiving an unsatisfactory rating prevented her from advancing to "the proper salary step. . . ." (*Id.* Subsection 9.)

Brandon also alleges that she was required to switch classrooms prior to both the 2008-2009 and 2009-2010 school years. The latter move appears to have taken place on June 25, 2009. (*Id.* Subsection 6.) Brandon was both the only African-American teacher in the science department and the only member of the department to be asked to move classrooms in either year. Brandon alleges that these classroom moves were difficult for her to undertake while recovering from cancer treatment and that the Academy failed to provide her with assistance from its janitorial staff.

Finally, Brandon alleges that she was assigned homeroom duty for the 2009-2010 school year even though she requested three alternatives to that assignment, most notably hall duty. (*Id.* Subsection 8.) Brandon alleges that she was senior to other teachers who were assigned in accordance with their preferences and that the Academy generally made such assignments based on seniority. (*Id.*)

Brandon filed an EEOC charge that was stamped received by the EEOC on November 6, 2009. (Mason Dec. Ex. H.) She filed this action on July 7, 2010 alleging claims under Title VII, the ADA, the SHRL, and the CHRL against both O'Mara and the Academy. On January 28, 2011, O'Mara filed a motion [6] under Federal Rule of Civil Procedure 12(b)(6) to dismiss Brandon's claims against her for failure to state a claim for which relief can be granted.

**LEGAL STANDARD**

"Courts ruling on motions to dismiss must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Dickerson v. Mut. of Am.*, 703 F. Supp. 2d 283, 290 (S.D.N.Y. 2010).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*  (quoting *Twombly*, 550 U.S. at 557).

"A document filed *pro se* is 'to be liberally construed,' and a '*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Courts must "read[] such submissions 'to raise the strongest arguments they suggest.'"  *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  However, "[w]hile held to a less stringent standard, the *pro se* plaintiff is not relieved of pleading

4

requirements, and failure to plead the basic elements of a cause of action may result in dismissal." *Andino v. Fischer*, 698 F. Supp. 2d 362, 376 (S.D.N.Y. 2010).  Indeed, "pro se status does not relieve a plaintiff of the pleading standards otherwise prescribed by the Federal Rules of Civil Procedure." *Pandozy v. Segan*, 518 F. Supp. 2d 550, 554 (S.D.N.Y. 2007).

## DISCUSSION

### A.   Federal Claims

#### 1.   O'Mara

Brandon alleges that O'Mara discriminated against her in violation of two federal statutes, Title VII and the ADA.  Title VII imposes liability on employers who discriminate.  "Title VII defines 'employer' in relevant part as 'a person engaged in an industry affecting commerce who has fifteen or more employees . . .  and any agent of such a person.'" *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) (quoting 42 U.S.C. § 2000e(b)).  The Second Circuit has interpreted this definition to mean that "individuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (citing *Tomka*, 66 F.3d at 1314).  Brandon's Title VII claim against O'Mara must therefore be dismissed.

The ADA defines an "employer" in terms identical to the above quoted definition in Title VII.  Accordingly, "district courts in the Second Circuit, while acknowledging that the Second Circuit has not directly ruled on the issue, have held that an employee cannot be held liable under the ADA." *Glozman v. Retail, Wholesale & Chain Store Food Emples. Union Local 338,* 204 F. Supp. 2d 615, 627 n.6 (S.D.N.Y. 2002); *see also*

*Lee v. Sony BMG Music Entm't, Inc.*, 557 F. Supp. 2d 418, 424 (S.D.N.Y. 2008); *Ifill v. United Parcel Serv.*, No. 04 Civ. 5963, 2005 WL 736151, at *2 (S.D.N.Y. Mar. 29, 2005) ("Since the ADA's definition of 'employer' is similar to Title VII's definition, there also is no individual liability under the ADA."); *Plumey v. New York State*, 389 F. Supp. 2d 491, 499 (S.D.N.Y. 2005); *Harrison v. Indosuez*, 6 F. Supp. 2d 224 (S.D.N.Y. 1998) (holding that "as Title VII and the ADA define 'employer' identically, the Court's holding in *Tomka* clearly supports the rejection of personal liability under the ADA as well"); *Cerrato v. Durham*, 941 F. Supp. 388, 395 (S.D.N.Y. 1996) (same). Brandon's ADA claim against O'Mara must also therefore be dismissed.

### 2. The Academy

Brandon also appears to allege that Kingsbridge discriminated against her in violation of Title VII and the ADA. Under New York law, Kingsbridge Academy cannot be sued. *See Carpenter v. City of New York*, No. 09-CV-4524, 2010 WL 2680427, at *4 (E.D.N.Y. June 30, 2010) (holding that a unit of the Department of Education cannot be sued); *see also Gear v. Dept. of Educ.*, No. 07 Civ. 11102, 2009 WL 484424 (S.D.N.Y. Feb. 24, 2009) (same). Claims against the Academy must be brought against the Department of Education. Accordingly, Brandon's claims against Kingsbridge Academy are dismissed. However, since Brandon's complaint must "be liberally construed,'" *Erickson*, 551 U.S. at 94, the Court will construe Brandon's claims against the Department of Education. *See Carpenter*, 2010 WL 2680427, at *4.[2]

Defendants argue that if "the Court imputes plaintiff's claims against the Riverdale Kingsbridge Academy to the DOE" those claims must be dismissed for failure

---

[2] Indeed, there is some indication from the certificate of service on the docket that service was effected on the Department of Education. (*See* Certificate of Service, D.I. 4, at 3.)

6

to state a claim.  (Def.'s Br. at 2 n.2.)  As an initial matter, Defendants argue that Brandon's claims are time-barred to the extent that they arise from actions taken on or before January 10, 2009.  Defendants further argue that (1) Brandon is not disabled as a matter of law; (2) that she has not suffered an adverse employment action; and (3) that she has not pled facts giving rise to an inference that the actions taken against her were taken with discriminatory intent.

### a. Statute of Limitations

"For a Title VII claim arising in New York to be timely, a plaintiff must file the charge with the Equal Employment Opportunity Commission ('EEOC') within 300 days of the allegedly unlawful employment practice."  *Baroor v. New York City Dept. of Educ.*, 362 Fed.Appx. 157, 159 (2d Cir. 2010); *see also Sims v. City of New York,* 2010 WL 3825720, at *6 (S.D.N.Y. Sept. 30, 2010) ("Under Title VII, before bringing a claim in federal court, a New York plaintiff must file a charge with the EEOC within 300 days of the alleged discriminatory act."); *see* 42 U.S.C.2000e-5(e)(1).  Since under the ADA, the procedures for filing claims are governed by the procedures provided in Title VII, *see* 42 U.S.C. § 12117(a) (incorporation by reference 42 U.S.C. § 2000e-5), the same 300-day rule applies to ADA claims as well.  *See Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir. 1999); *see also Springs v. Bd. of Educ.*, No. 10 Civ. 1243, 2010 WL 4068712, at *2 (S.D.N.Y. Oct. 14, 2010) (Holwell, J.) ("Likewise, in New York ADA employment claims must be filed with the [EEOC] within 300 days of their accrual.").

Here, Brandon filed her EEOC charge on November 6, 2009.  Accordingly, only those claims arising out of events that occurred less than 300 days before that date, that is, after January 10, 2009, are timely.  That means that Brandon's claims are timely only

7

with respect to her claims regarding her unsatisfactory rating and her assignment to a new classroom and homeroom duty for the 2009-2010 school year.[3]  The Court now proceeds to consider whether Brandon's allegations regarding those events state a claim under either Title VII or the ADA.

### b. Title VII

Generally, Title VI disparate treatment "claims are analyzed under the burden-shifting rules of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, (1973)." *United States v. Brennan*, --- F.3d ----, 2011 WL 1679850, at *20 (2d Cir. May 5, 2011). "Under *McDonnell Douglas,* a plaintiff must first make out a *prima facie* case, *i.e.,* she 'must demonstrate the following: (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.'" *Id.* (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009)).

Brandon refers to race only tangentially and only in the context of describing her classroom and homeroom assignments.  Defendants argue that neither of these assignments constitutes an "adverse employment action."

---

[3] It is true that "[s]tatutes of limitations are generally subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for her lateness in filing." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004).  "Though [Brandon] does not expressly make an argument for it, a court may equitably toll a statute of limitations in certain very limited situations." *Springs*, 2010 WL 4068712, at *3.  "There are three general instances in which equitable tolling is appropriate, (1) a plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant; (2) a plaintiff actively pursued judicial remedies by filing defective pleadings during the statutory period; or (3) extraordinary circumstances have prevented the employee from exercising his or her right." *Id.*  Brandon has not alleged fact even close to sufficient to show any of these.

"An adverse employment action is a materially adverse change in the terms and conditions of employment." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (quoting *Fairbrother v. Morrison,* 412 F.3d 39, 56 (2d Cir. 2005)). As these examples suggest, "[a]n adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (quotation marks omitted).

Here, however, Brandon's allegations that the Academy assigned her to a new classroom and to homeroom duty add up to nothing more than an "alteration of job responsibilities." Brandon does not allege that these actions diminished her status or affected her compensation. She merely alleges that the assignments were "unnecessary" or were not her "preferences." Perhaps not, but Brandon must show more to state a claim for race discrimination under Title VII. *See Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 639 (2d Cir. 2000) (plaintiff did not suffer adverse employment action where "he was denied assignment to the P.S. 4 computer lab, not assigned for the start of the 1993-94 school year, mis-assigned to [another school], and then ultimately assigned to [a school] where he was forced to teach outside his area of expertise"); *Boise v. Boufford,* 121 Fed.Appx. 890, 892-93 (2d Cir. 2005); ("[T]he assignment to Boise of four courses rather than five . . . does not allege any resulting loss in wages, does not constitute the adverse employment action necessary to establish a prima facie case."); *Klein v. New*

9

*York University*, --- F.Supp.2d ----, 2011 WL 2020880, at *10 (S.D.N.Y. Apr. 1, 2011) (Kaplan, J.) ("Klein has not offered any evidence that the aspect of her teaching schedule of which she complains impacted her compensation or other material benefits. Thus, her course assignments and the composition of her classes cannot be considered adverse employment actions."). Because she has not, Brandon's Title VII claims must be dismissed.

### c. ADA

The Court can discern three possible ADA claims from Brandon's complaint. The first claim appears to be that the Academy failed to accommodate Brandon's disability in requiring her to move without janitorial assistance and assigning her to homeroom rather than hall duty. With respect to that claim, Brandon "has the burden of making out a prima facie case, which includes the following elements: 1) [s]he was an individual who has a disability within the meaning of the statute; 2) the employer had notice of h[er] disability; 3) [s]he could perform the essential functions of the job with reasonable accommodation; and 4) the employer refused to make such accommodation." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 102 (2d Cir. 2010) (quotation marks omitted).

Defendants argue that Brandon's condition was temporary and, as such, cannot constitute a disability under the . . . ADA." (Defs.' Br. at 11.) Defendants are not entirely correct.

The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42

U.S.C. § 12102(1).  Courts in this Circuit "follow[] 'a three-step process for determining whether a plaintiff has a disability' that is protected by the ADA." *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 201 (2d Cir. 2004) (quoting *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 6461 (2d Cir. 1998)).  They consider "(1) whether the plaintiff suffered from a physical or mental impairment, (2) whether the life activity upon which the plaintiff relied . . . constitutes a major life activity under the ADA, and (3) whether the plaintiff's impairment substantially limited [the] major life activity identified." *Jacques*, 386 F.3d at 201 (quotation marks omitted, ellipsis in original).

In *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* 534 U.S. 184 (2002), the Supreme Court held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id.* at 198.  The Supreme Court also held that "the impairment's impact must also be permanent or long term." *Id.*

In 2008, finding that the Supreme Court's holding in *Toyota* "interpreted the term 'substantially limits' to require a greater degree of limitation than was intended by Congress" and that "as a result . . . lower courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities," Pub. L. 110-325, § 2(a)(7), Sept. 25, 2008, 122 Stat. 3553, Congress amended the ADA effective January 1, 2009. *Id.* § 8.  The purpose of the amendment was, *inter alia*, "to reject the standards enunciated by the Supreme Court in [*Toyota*] . . . that to be substantially limited in performing a major life activity under the ADA 'an individual must have an impairment that prevents or severely restricts the individual from

11

doing activities that are of central importance to most people's daily lives'. . . ." *Id.* § 2(b)(5).

As amended, the statute provides that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). The amended statute further provides that "[t]he term 'substantially limits' shall be interpreted consistently with the findings" mentioned above. *Id.* § 12102(4)(B).

Given that Congress clearly expressed its intent to overturn the Supreme Court's holding in *Toyota* that "the impairment's impact must also be permanent or long term," 534 U.S. at 198, Defendants' reliance on decisions prior to the 2008 amendments is misplaced. Moreover, EEOC regulations implementing the 2008 amendments provide that "[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ix). While Defendants cite statutory language indicating that certain provisions "shall not apply to impairments that are transitory and minor," 42 U.S.C. § 12102(3)(B), the statutory text makes clear that this language only applies to "Paragraph 1(C)," *i.e.*, whether a plaintiff was "regarded as having such an impairment." *Id. Cf.* 29 C.F.R. § 1630.2(j)(1)(ix) ("The six-month 'transitory' part of the 'transitory and minor' exception to 'regarded as' coverage . . . does not apply to the definition of 'disability' under . . . the 'actual disability' prong[] or . . . the 'record of' prong."). Accordingly, it is not quite correct that because Brandon "offers no factual allegation that her fatigue from cancer therapy was not temporary . . . her claim must fail." (Def.'s Br. at 10.)

However, the fact that Brandon does not offer any factual allegations regarding her impairment is hardly immaterial. While Congress undoubtedly intended to broaden the scope of the ADA beyond the boundaries recognized in *Toyota*, it remains the case that "not every impairment will constitute a disability. . . ."  29 C.F.R. § 1630.2(j)(1)(ii). Indeed, the revised EEOC regulations provide that "[a]n impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.* That is, while "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting," *id.*, the substantially limits analysis is comparative.

That matters because Brandon has not alleged any facts other than that, upon returning to work, she "would experience fatigue" and "was not to engage in lifting objects." The latter allegation seems to suggest an impairment of a "major life activity"—lifting—identified by the ADA as amended. However, without any additional factual detail, it is virtually impossible to determine whether Brandon's impairment limited her ability to lift objects "as compared to most people in the general population." Perhaps "the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis," *id.* § 1630.2(j)(1)(iii), but the pleading standards recognized in *Iqbal* demand some analysis. But absent any details as to how or why Brandon was limited in lifting—let alone any description of what kind of cancer she had or what kind of treatment she received or for how long—the Court simply cannot determine whether eighteen months after returning from medical leave Brandon was any more impaired in lifting her room supplies than any other teacher or any other person.

13

That is not to say that the Court doubts that Brandon's cancer proved extremely difficult for her. But to bring a legal claim against the Academy under the ADA, Brandon must provide some minimal details about what her condition was, what treatment she received for it, how long the treatment lasted, and how it affected her.[4] She has not done so. Accordingly, her reasonable accommodation claims must be dismissed.

Second, Brandon's allegation that her assignment to homeroom duty was "discriminatory" could be interpreted as a claim for discrimination under the ADA to the effect that she was given that assignment because she was disabled. "To establish a prima facie case of discrimination under the ADA, plaintiff must show by a preponderance of the evidence that (1) h[er] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because of h[er] disability." *Heyman v. Queens Village Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999).

For the reasons set forth above, Brandon has not alleged sufficient facts to show that she was disabled and as a matter of law her assignment to homeroom duty was not an adverse employment action. Those are reason enough to dismiss any ADA discrimination claim that her complaint could be read to allege. In any event, however, Brandon has not alleged facts that could justify the inference that the Academy assigned

---

[4] For that reason, Brandon's general claims that she "would experience fatigue" and that her "workload was overwhelming" are also insufficient to show that she was disabled. While the ADA identifies "working" as a major life activity, Brandon has not specified anything that the Court can use to determine whether her impairment substantially impaired that major life activity.

her to homeroom duty because of her disability. Brandon offers only the conclusory assertion in her opposition that "[t]he rapid removal of materials from [her] classroom assignment in 2009 exacerbated [her] existing disability." (Pl.'s Opp'n at 10.) Such "conclusory statements . . . do not suffice" to state a claim, *Iqbal*, 129 S. Ct. at 1949, and statements about how the Academy's action affected Brandon's disability cannot take the place of factual allegations showing that the Academy took its action because of her disability. Accordingly, to the extent that Brandon alleges that the Academy discriminated against her by assigning her to homeroom duty, her claim must be dismissed.

Third, Brandon alleges that she was "penalized" for requesting accommodations during the first semester of the 2009 school year with an unsatisfactory rating at the end of that year. While Brandon's claim regarding the Academy's failure to make those accommodations in September to January of 2009 is time-barred for the reasons set forth above, Brandon's claim that the Academy retaliated against her at the end of the school year is not. However, "[t]o make out a *prima facie* claim of retaliation, [Brandon] must show that (1) she engaged in ADA-protected activity (2) of which defendants were aware, (3) she was subjected to an adverse employment action, and (4) a causal connection existed between the adverse employment action and her protected activity." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir 2002) (citing *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir. 2002)).

Defendants argue that Brandon did not suffer an adverse employment action when the Academy gave an unsatisfactory rating. The Court disagrees. True, "[i]t is well-settled that negative evaluations alone, without any accompanying adverse consequences,

15

such as a demotion, diminution of wages, or other tangible loss, do not constitute adverse employment actions." *Gordon v. N.Y.C. Bd. of Educ.,* 01 Civ. 9265, 2003 WL 169800 at *6 (S.D.N.Y. Jan. 23, 2003) (Scheindlin, J.) (citing cases).  Brandon, however, alleges such consequences.  While she does not allege that her salary actually decreased, she does allege that receiving an unsatisfactory rating prevented her from obtaining credit that would entitle her to a salary increase sometime in the future.

Nevertheless, even reading Brandon's "submissions to raise the strongest arguments they suggest," *Bertin*, 478 F.3d at 491 (quotation marks omitted), Brandon cannot show a "causal connection between the adverse employment actions and her protected activity." *Weixel*, 287 F.3d at 148.  Brandon does nothing more than challenge the reasons that the Academy apparently gave for her rating her unsatisfactory and then concludes that, because the Academy's reasons do not bear scrutiny, the Academy must have given the unsatisfactory rating to "penalize[]" her for "requesting assistance. . . . ." (Dec. of A. Mason, Jan. 27, 2011, Ex. B, Subsection E.)  Even if Brandon is correct that the Academy's reasons for rating her unsatisfactory were erroneous or pretextual, she has only shown that the reasons for the rating were not those that the Academy gave; she has not shown anything about what the reasons actually were.  Indeed, Brandon does not allege any facts that make any more plausible the inference that the Academy rated her unsatisfactory because she requested accommodation than the inference that school officials did not like her or made a mistake.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (quoting

16

*Twombly*, 550 U.S. at 557).  Accordingly, Brandon's complaint must be dismissed to the extent that it alleges a retaliation claim under the ADA.

   **B.**  **State and Local Claims**

  Brandon also alleges that O'Mara and Kingsbridge violated the SHRL and CHRL.  Defendants argue that "the Court should decline to exercise supplemental jurisdiction over [Brandon's] state disability and race discrimination claims." (Defs.' Br. at 3 n.3.)

  This Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between . . . citizens of different states. . . ."  28 U.S.C. § 1332(a)(1).  Defendants are citizens of New York whereas Brandon appears to be a citizen of Connecticut.  However, Brandon has requested only $70,000 in compensatory damages.  While she has requested $50,000 in attorney's fees and costs, the plain text of the statute makes clear that the Court must calculate the amount in controversy "exclusive of interest and costs."  And since Brandon has acted "Pro se in this action [s]he is not entitled to any attorney's fees."  *Logue v. Cottage Assocs.*, 410 N.Y.S. 2d 869, 870-71 (2d Dep't 1978).  *Cf. Kay v. Eherler*, 499 U.S. 432 (1991) (holding that even a lawyer appearing *pro se* cannot recovery attorney's fees under the Civil Rights Attorney's Fees Act).

  Brandon has also requested $5 million in punitive damages.  "[I]f punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied." *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991).  However, "punitive damages are not available under the NYS Human [Rights] Law." *Leslie v. BanTec Servs. Corp.*, 928 F. Supp. 341, 349 (S.D.N.Y. 1996) (citing *Thoreson v. Penthouse Int'l, Ltd.*, 606 N.E.2d

17

1369, 1372-73 (N.Y. 1992)).  Nor are they available for actions under the New York City Human Rights Law against agencies of the City of New York or their employees.  *See Krohn v. New York City Police Dept.*, 811 N.E.2d 8 (N.Y. 2004) (answering in the negative certified question as to whether plaintiff could recover punitive damages for workplace gender discrimination claim against the NYPD and her supervisor).  *Cf. Krohn v. New York City Police Dept.*, 372 F.3d 83 (2d Cir. 2004) (affirming vacatur of punitive damages award following certification).  Thus the matter in controversy here is $70,000—less than, not in excess of, the $75,000 threshold.  Accordingly, had Brandon alleged only state and city law claims, the Court would have had no original subject matter jurisdiction over such claims.

That is not quite the end of the matter. "Federal courts have supplemental jurisdiction over state claims" over which they do not have independent jurisdiction if the claims "'are so related to claims in the action [that are] within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  *DCML LLC v. Danka Bus. Sys. PLC*, No. 08 Civ. 5829, 2008 WL 5069528, at *3 (S.D.N.Y. Nov. 26, 2008) (quoting 28 U.S.C. § 1367(a)).  That seems to be true here since Brandon's state and city law claims are based on the exact same facts that give rise to her federal claims.  However, the Court's exercise of supplemental jurisdiction is discretionary, and when "all federal claims have been dismissed before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the state-law claims."  *DCML LLC*, 2008 WL 5069528, at *3 (internal quotation marks omitted).  *Cf.* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed

18

19

all claims over which it has original jurisdiction."). Since all of Brandon's federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over Brandon's state and city law claims and dismisses them without prejudice.

## CONCLUSION

For the reasons set forth above, defendant O'Mara's motion to dismiss [6] is GRANTED. Dismissal of plaintiff's federal claims against O'Mara is with prejudice because there is no individual liability under Title VII or the ADA. Dismissal of plaintiff's federal claims against the DOE is without prejudice. Brandon may file an amended complaint against the DOE within sixty (60) days if she believes that she can properly allege facts that state a federal claim under Title VII or the ADA. Dismissal of plaintiff's state and local claims against O'Mara and the DOE is without prejudice to plaintiff's right to bring suit in state court (or in this court in the event she is able to file an amended complaint properly alleging federal claims).

Brandon may visit the Pro Se Office in this Courthouse for assistance in preparing any amended complaint. The Pro Se Office is located at the United States District Court of the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Room 230, New York, New York, 10007. Brandon may also call the Pro Se Office between 8:30 a.m. and 5:00 p.m., Monday through Friday: 212-805-0175.

SO ORDERED.

Dated: New York, New York
       September 28, 2011

_____
Richard J. Holwell
United States District Judge

20